Scoeield, J.,
delivered tbe opinion of the court:
By tbe Appropriation Act June 20, 1878 (20 Stat. L., 218), the Secretary of the Treasury was authorized to appoint two assistant Treasury agents at tbe seal fisheries in Alaska, with salaries of $2,190 each, and necessary traveling expenses in going to and returning from Alaska, $600 each.
By tbe Appropriation Act March 3, 1879 (20 Stat. L., 384, the same provision was made for tbe fiscal year ending June 30, 1880.
*9 The claimant was duly appointed one of these agents and attended to the duties of the position until August 1, 1880.
June 30,1880, this office expired by its own limitation. Its existence depended entirely upon the annual appropriations, and when they were exhausted the office closed. The claimant could not prolong its existence by continuing to perform its duties. (McCollum’s Case, 17 C. Cls. R., 92.)
In Shipman’s Case (18 C. Cls. R., 147) this court said:
“When an alleged liability rests wholly upon the authority of an appropriation they must stand and fall together, so that when the latter is exhausted the former is at an end, to be revived, if at all, only by subsequent legislation by Congress.”
It is contended by the claimant that the existence of his office did not depend solely upon the two appropriation acts above cited. Having been created by sections 1973 and 1974 of the Bevised Statutes it still subsisted. The failure of Congress to make appropriations for his salary did not take away his right to demand it.
The force of this argument is destroyed by the intervening-act of July 31, 1876, which provides:
“That the two assistant agents whose salaries as fixed by law at two thousand one hundred and ninety dollars each per annum, shall be discontinued from and after the first day of October, eighteen hundred and seventy-six.” (1 Sup’t R. S., p. 234.)
This language does not, as claimant argues, merely suspend the office; it abolishes it altogether; it is to continue no longer. The subsequent appropriations created the office anew, but for a specified period. Beyond that limit there was no office and no salary. If the claimant-chose to perform any duties pertaining to his late office after June 30, 1880, he performed them without authority of law, and thereby acquired no legal right to demand payment.
Although the claimant was entitled to no salary after June 30, 1880, he was entitled to his necessary traveling expenses in returning to his home. For these expenses the government was legally holden, and the Treasury Department was authorized to pay them from the appropriation made for that purpose. The fact that he remained at his post until his office expired and the expenses were thereby incurred after June 30, 1880, does not lessen the legal obligation of the government to pay them. (Pacific Mail Case, 18 C. Cls. R., 30.)
*10 The claimant presented to the department a bill for traveling expenses amounting to $185.21; also a claim for salary-after the expiration of his office amounting to $368.96. These two bills were submitted to Congress in the “deficiency estimates ” of January 17, 1881. Congress, in response thereto, March 3, 1881, appropriated $277.10. As the claim for traveling expenses was a legal charge, and the claim for salary was not, we must infer that Congress designed to pay the traveling expenses in full and apply the balance in settlement of the claim for salary.
At the time this deficiency estimate was submitted to Congress the claimant had not paid for his passage from Alaska to San Francisco, which amounted to $100. He subsequently paid it and thereby become entitled to be reimbursed. Had the claimant brought suit in this court by voluntary petition the court would have been authorized by the facts therein appearing to give judgment in his favor for the balance of his unpaid traveling expenses, to wit, $100. The case, however, is transmitted to the court under the second section of the act of March 3, 1883, which provides that—
“When the facts and conclusions of law shall have been found the court shall not enter judgment thereon, but shall report its findings and opinions to the department by which it was transmitted for its guidance and action.”
Although the defendants are legally holden for the $100 the Treasury Department cannot pay it, because there is now no appropriation for that purpose.
The Chief Justice was not present at the trial of this case and took no part in the decision.
Weldon, J., had not taken his seat when this case was heard, and took no part in the decision.
The following form of judgment in this class of cases was prescribed by the court, the Chief Justice and Weldon, J., taking part:
John W. Beaman The United States.
In this case, transmitted to this court by the Secretary of the Treasury on the 21st of June, 1883, under section 2 of the *11 act of March 3, 1883, entitled “An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the government,” the court files a finding of facts, together with conclusions of law and opinion of the court thereon; and it is thereupon
Ordered, That the clerk certify to the Treasury Department a copy of said findings, conclusions, and opinion.